UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TROY LANDRY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-2794** |
| **ATLANTIC RECORDING CORPORATION ET AL.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the motion for summary judgment of Atlantic Recording Corporation, Atlantic Ventures, Inc. d/b/a/ Atlantic Recording Ventures, Lava Records, LLC., Warner-Tamerlane Publishing Corporation, Thirty-Two Mile Music, Gaje Music, Cradle the Balls, Buried Bone Music, Robert James Ritchie (Kid Rock), Matthew Shafer, John Travis, Kenny Olson is **GRANTED**. (Document #88.)

**IT IS FURTHER ORDERED** that the unopposed motion to dismiss the claim under the Louisiana Unfair Trade Practices Act as preempted is **GRANTED**.

**IT IS FURTHER ORDERED** that the Lanham Act, 15 U.S.C. § 1125, claim is dismissed *sua sponte* for failure to state a claim upon which relief may be granted.

### I. BACKGROUND

Troy Landry is a song writer and a member of a local New Orleans band, Loon. In July

1994, Landry released a phonorecord, which included songs entitled "Love Funk" and "Feel It." Landry registered the songs with the United States Copyright Office, and the copyrights are currently valid.  The songs received air play on local radio stations.

In 1998,  Atlantic Recording Corporation, Atlantic Ventures, Inc. d/b/a/ Atlantic Recording Ventures, Lava Records, LLC., Warner-Tamerlane Publishing Corporation, Thirty-Two Mile Music, Gaje Music, Cradle the Balls, Buried Bone Music, Robert James Ritchie (Kid Rock), Matthew Shafer, John Travis, Kenny Olson (the defendants) released a song entitled "Somebody's Gotta Feel This" by the artist, Kid Rock.[1]  Landry heard "Somebody's Gotta Feel This" during a football game when Kid Rock performed the song in a beer commercial.  Landry contends that an eight-second portion of the release, which is in the same "rap-rock" genre as his music, is strikingly or substantially similar to his copyrighted songs; and that the defendants have never obtained a license or authority from him to distribute his musical works.

Landry filed a complaint against the defendants alleging copyright infringement under 17 U.S.C. § 101 *et seq.* and trademark infringement under 15 U.S.C. § 1125.  Landry alleges that the eight-second portion of the composition in question is the memorable portion of the song or the "hook," which is repeated several times during the song and makes up 45% of the four-minute song, *i.e.* one minute and forty-two seconds.  He seeks injunctive relief, the return of infringing articles, recovery of monetary damages, treble damages, and costs and attorney's fees. See 17 U.S.C. § 502-§ 505, 15 U.S.C. § 1116-1117. Landry also alleges claims of unfair

---

[1]   Atlantic, Lava, and Warner-Tamerlane marketed and distributed the album.  Thirty-Two Mile Music, Gaje Music, Cradle the Balls, and Buried Bone Music are companies owned by the individual defendants and hold the publishing rights to their music.

competition and deceptive acts under La. Rev. Stat. 51:1401 *et seq.*[2]

The defendants deny that they had access to Landry's songs or that they are substantially or strikingly similar. They maintain that the allegedly copied two-measure riff, which contains the chorus and refrain, was created independently and that the short series of chords is not protectible because it is common and in the public domain.

The defendants filed a motion for summary judgment.

## II. DISCUSSION

**A. Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to

---

[2] Landry does not oppose the dismissal of the Louisiana Unfair Trade Practices Act (LUTPA) claims as preempted by the Copyright Act.

return a verdict for the nonmoving party. Id. If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B. Copyright infringement**

"To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright[3] and (2) the defendant copied constituent elements of the plaintiff's work that are original." Positive Black Talk, Inc. v. Cash Money Records, 394 F.3d 357, 367 (5th Cir. 2004). "To establish actionable copying (*i.e.* the second element), a plaintiff must prove: (1) factual copying and (2) substantial similarity." Id. "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work and (2) probative similarity." Id. at 367-68 (internal quotation and citation omitted). "If a plaintiff establishes an inference of factual copying (by showing access and probative similarity), the defendant can rebut that inference, and thus escape liability for infringement, if he can prove that he independently created the work. Id. at 368. "If a plaintiff has established factual copying (and the defendant does not establish independent creation), the plaintiff must also prove that the copyrighted work and the allegedly infringing work are substantially similar." Id. The "purpose of the probative similarity inquiry is to determine whether factual copying may be inferred." Id. at 370. "[T]his inquiry is not the same as the question of substantial similarity, which dictates whether the factual copying, once established,

---

[3] Ownership of Landry's copyright is not an issue in this case.

is legally actionable. Id. "Probative similarity[ ] requires only the fact that the infringing work copies something from the copyrighted work; . . . substantial similarity[ ] requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." Id. (internal quotation and citation omitted).

### 1. Inference of factual copying

"The access element is satisfied if the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work." General Universal Systems, Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). The evidence must establish more than speculation and conjecture regarding access by the defendants. Peel & Co., Inc. v. Rug Market, 238 F.3d 391, 396 (5th Cir. 2001).

Landry concedes that he has no direct evidence that the defendants heard his work; however, he contends that the defendants had an opportunity to hear his compositions. Landry testified in his deposition that the 1994 CD with Loon was self-published. Def.'s exh. B, 23. He printed 5,000 albums, submitted the CD for consideration to all the major record companies and independent labels, and distributed them for approximately three years at shows from Atlanta throughout the south to Houston and locally through Tower Records. Id., 24-26. As to Kid Rock, Landry contends that his record label, Top Dog Records, could have received a CD if it was listed anywhere. Id., 49. Warner Brothers' representative in Mandeville, Louisiana, and some independent labels showed some interest, but no recording or publishing contract was offered. Id. at 27. Landry's album with the two songs received "airplay" from radio stations in Atlanta and at university stations in Louisiana and Mississippi. Id., 29.

Further, Landry stated that Kid Rock played at Jimmy's in New Orleans in 1998 and had access to his music; Loon played at Jimmy's in November 1998, and the album was on the jukebox. Def's exh. B, 46. Landry had no personal contact with Kid Rock or his band, but stated that it was possible that someone could have given him their CD. Id., 47-48.

Robert Ritchie, Matthew Shafer, John Travis, and Kenny Olson submit affidavits in which they state that, from August 30, 1997 to September 1, 1997, they collaborated at Ritchie's house in Royal Oak, Michigan, on the songs, "Somebody's Gotta Feel This" and "I Got One for You." Def.'s exh. D, E, F, G. Ritchie also states that his first or "rough cut" of the song was written in 1994. Def.'s exh. D. On September 1, 1997, the artist-defendants mailed a tape with the two completed songs to Jason Flom, an executive at Atlantic Records. Id. Atlantic offered a record deal on September 2, 1997. Id.

In February 1998, Shafer, Ritchie, Travis, and Olson worked for about five weeks to write other songs for the album. Id. No changes were made to "Somebody's Gotta Feel This." Id. Shafer accompanied Ritchie to New Orleans in the spring of 1998, after "Somebody's Gotta Feel This" was recorded on September 1, 1997. Id. The defendants state that they never heard of Troy Landry or Loon, never attended their performance, and never heard the songs "Love Funk" or "Feel It" at a performance, on the radio, or on television. Id.

The defendants state that they have been writing music for many years and that the series of power chords in question are common to rock or hip hop music. Id. Ritchie states that a similar series of power chords appear in a song he wrote called "Paid" on a previous album, "Early Morning Stoned Pimp." Def.'s exh. D. Ritchie further states that he received no creative

direction from Atlantic or Warner related to "Somebody's Gotta Feel This." Id.

Landry's allegations, supported only by his affidavit, that the defendants may have heard his music are insufficient to establish access. Landry disseminated copies of his work to various music producers, but any conclusion that these producing defendants heard his work and somehow collaborated with Kid Rock and other performing defendants to copy it is highly speculative. Further, Landry does not contend that his music received nationwide distribution or achieved national acclaim on the music charts to support the allegation that the performing defendants had an opportunity to hear his work. Moreover, Landry presents no evidence to contradict the performing defendants' affidavits that they had not heard Landry's music, they did not collaborate with any producers or distributers in creating their work, and that they independently created the work in September 1997. Moreover, Landry's statements that Kid Rock could have heard the work in New Orleans in 1998 does not address the defendants' affidavits that they completed their song and entered an agreement with the Atlantic Records in September 1997.

Accordingly, the court concludes that Landry has not satisfied the access prong to establish an inference of factual copying. "However, "[i]n some cases, factual copying may be proven without a showing of access if the two works are so strikingly similar as to preclude the possibility of independent creation." General Universal Systems, Inc. v. Lee, 379 F.3d at 142. The court now examines the striking or substantial similarity of the two works.

**2. Substantial similarity**

"Not all copying is legally actionable." Id. "[T]he copy must bear a substantial

similarity to the protected aspects of the original." Id. at 398. "To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" See Positive Black Talk, Inc. v. Cash Money Records, 394 F.3d at 374 (internal quotation and citation omitted). "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original . . . as long as such use does not unfairly appropriate the author's original contributions." Harper & Row, Publishers, Inc. v. Nation Enter., 105 S.Ct. 2218 (1985). Where there are both protectible and unprotectible elements of a work, the court must "attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements standing alone are substantially similar." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995). "Summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expressions." Peel & Co., Inc. v. Rug Market, 238 F.3d at 395.

John Joyce, an Associate Professor of Music at Tulane University, was asked by Landry to examine an excerpt from "Somebody's Gotta Feel This" to determine similarities with "Love Funk" and "Feel It." Def.'s exh. I. He concluded that, even at first listening, the resemblance was obvious "enough to say that one of the excerpts is derived from the other." Id. The pieces are not "songs" in the traditional sense. They "follow the framework–common to much contemporary rap music–of a signature riff phrase, or 'hook,' (which can be either vocal or purely instrumental) alternating with contrasting, recitational strains. These alternating strains,

when sung to words, function like a song verse, against the hook's function as a refrain." Id.  In "Love Funk" and "Somebody's Gotta Feel This," the bass guitar riffs function as an instrumental 'hook.'" Id.  "While the two 'hooks' are not identical in every detail, they sound distinctly related." Id.  "The rhythmic pattern of the recited phrases and their placement in the measure are nearly identical." Id.  Joyce concluded that "it is highly unlikely that the songs were composed independently of each other." Id.

In his deposition, Joyce testified about his analysis of the two-measure riff found in "Somebody's Gotta Feel This" and "Love Funk." Def.'s exh. J, 23.[4]  Joyce concluded that the two songs as a whole were different, but the similarity was in the "riffs or bass hooks." Id., 29-30.  The pitches in the two-measure excerpt were different in two ways:  one is a slightly higher key, and the Kid Rock song has a short "pickup note" that the Loon song does not have. Id., 30-31.  The pitch pattern connected with the rhythmic pattern is identical in both. Id., 44.  Joyce opined that there was a possibility that the songs were completely spontaneous of each other, but his "hunch" was that Kid Rock was aware of Landry's song for the "hook." Id., 44-45.  However, in Dr. Joyce's opinion, there was no idiosyncrasy in one that was carried over to the other. Id., 45.

Landry's second expert, Tae Hong Park, an assistant professor of music at Tulane University, prepared an analysis focusing on the two-measure "hook" or "chorus" of both songs. Def.'s exh. K.  Park opined that the "two songs belong to a very similar style of popular music which includes rap, strong distortion guitar using 'power chords,' and a strong hook." Id.  "The

---

[4] Joyce made only the verbal comparison with "Feel It." Id., 29.

melodic and rhythmic structure as it pertains to the main riff is quite similar," and "the melodic contour or shapes of the main riffs are remarkably similar." Id. The main difference is in the latter half of the two riffs: Loon's song goes down, and Kid Rock's goes up. Id. Park opined that his experiment shows that the two measures from the two songs actually sound like the same song. Id.

Landry stated in his deposition that he could provide no evidence that it was other than a coincidence that the two bars of the songs sounded similar. Def.'s exh. B, 73-76. Landry testified that the phrase "I'm gunna make you feel it" is not original and is a common phrase. Def.'s exh. B, 54-55.

Gerald Eskelin, the defendants' expert, compared the protectible and non-protectible elements of "Somebody's Gotta Feel This," "Love Funk," and "Feel It." Def.'s exh. M. He concluded that there are no expressions in Kid Rock's song that are substantially or strikingly similar to the protectible expressions in Landry's songs" and that "[a]ny similarities contained in the three songs are based on elements that are common to rock and rap songs, including power chords, the pentatonic blues scale, and syncopated rhythm patters." Id.

Eskelin provided a report in which he compared five musical elements or "motives" of "Somebody's Gotta Feel This" with the three motives in "Love Funk" and one motive in "Feel It" to determine to whether and to what extent the musical expressions are similar. Def.'s exh. M. Specifically Eskelin stated:

> There are no motives or phrases in "Somebody" that are musically substantially similar to any motives or phrases in either "Love" or "Feel." In all three songs, some motives are performed in power chords; however, that technique has been

10

> common practice in rock music for many decades. All three songs contain motives based on the pentatonic blues scale; however, that too is commonplace in rock songs.
> The occasional syncopated rhythm patterns that are similar in these songs are also similar to hundreds of other rock songs.

Id. Eskelin concluded as follows:

> "Somebody's Gotta Feel This" consists of motives and phrases that are organically related to each other. Elements in one motive are often contained in other motives, creating a unified and cohesive overall expression. This suggests that the individual musical ideas and expressions in "Somebody," while clearly based on common vocabulary drawn from popular blues and rock styles, are specifically created as a means of unifying the work itself, and need not have been "imported" from another song.
> . . . .
> [T]here are no musical or lyrical expressions in "Somebody's Gotta Feel This" that are substantially similar to protectible expressions in "Love Funk" or "Feel It" or both.

Id.

Musicologist Anthony Ricigliano, the defendants' expert, states in an affidavit that the "only possible similarity between defendants' song, "Somebody's Gotta Feel This," and plaintiff's song, "Love Funk," is a two-measure riff, both of which utilize basic elements that are common to rock and rap songs. The overall elements of both songs are distinctively different." Def.'s exh. N. The only lyrical similarity between "Somebody's Gotta Feel This" and "Feel It" is the word "feel." Id. "Although the lines in "Somebody's Gotta Feel This" contains three of the same pitches (A-C-G) as found in "Feel It," the overall pitch content, pitch series and rhythm are distinctively different in "Somebody's Gotta Feel This." Id. (Report #1.) "In addition, the compositional development used in both works is also different." Id. "Furthermore, there is a distinct difference in the overall instrumentation between these works." Id.

11

Ricigliano concluded "that the song "Somebody's Gotta Feel This" does not contain any significant or substantially similar material in lyrics, or in musical content to the composition "Love Funk" to in any way suggest that copying has occurred." Id. (Report #2.) "The only arguable similarity between these works relates to the bass line and guitar chords that begin at approximately 26 seconds into the song "Love Funk" and the principal bass line and guitar part in "Somebody's Gotta Feel This" that begin at approximately 31 seconds into this composition directly after the presentation of the lyric phrase "somebody's gotta feel this." Id. "Although the bass lines in both compositions make use of the pitches G, A, and C, the overall pitch content, pitch series and rhythm utilized in these lines is distinctively different." Id. "Although both make use of chords voiced using the interval of a fifth . . ., this is not significant since it is a common technique used in this style of musical composition/performance." Id. "Any similarity between these two compositions appears to be due to the use of basic music and lyric elements or non protectible musical material that is characteristic to this style of music." Id. "Therefore, there is no music or lyric material utilized in Somebody's Gotta Feel This that is substantially similar to the composition Feel It to justify a claim of copyright infringement." Id.

The works are not so strikingly or substantially similar as to preclude independent creation. The testimony of Landry and his experts focuses only on the two-measure riffs and undermines their conclusion of substantial similarity by recognizing that the measures are common in the rap genre of music. The expert evidence presented by Landry and his own statements do not foreclose the conclusion that the songs were created completely independently of each other. The opinions of the defendants' experts support the conclusion that the elements

of similarity are common to rock and rap songs and are characteristic of this style of music.

Moreover, the court has conducted a side-by-side examination of the works in question. As an "ordinary observer" or "ordinary listener," the court concludes that a layman would not view the works as substantially similar. See Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005). "[I]n assessing evidence of actual copying, a court must be mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various composition." Id. at 22 (internal quotation and citation omitted). In this case, the only similarity is in the two-measure riffs, which all experts and Landry agree are common elements.

Viewing the evidence and drawing inferences in a manner most favorable to Landry, the court concludes that the evidence does not establish that the songs are substantially or strikingly similar. Accordingly, Landry has not identified a degree of similarity to establish that the defendants unlawfully appropriated his original, protectible expressions, and the defendants' motion for summary judgment is granted.

**C. Lanham Act, 15 U.S.C. § 1125**

Landry alleges a claim of false and misleading designations and representation of the origin, authorship, and copyright ownership of his songs under the Lanham Act, 15 U.S.C. § 1125. Although the defendants do not address this claim in the motion for summary judgment, the court exercises its right to dismiss the claim on its own initiative for failure to state a claim because the inadequacy of the claim is apparent as a matter of law.

The Lanham Act does not protect Landry from false designation of the origin of his

expressions. See Dastar Corp. v. Twentieth Century Fox Fil Corp., 123 S.Ct. 2041, 2050 (2003). The phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Id. The copyright and patent laws were designed to protect originality or creativity, not the Lanham Act. Id.

In the complaint, Landry does not allege that the defendants offered for sale tangible goods that he produced, but that they copied the two-measure riff that he authored and that is present in Kid Rock's song. Such conduct does not give rise to a claim under the Lanham Act, and the claim is dismissed *sua sponte* for failure to state a claim upon which relief can be granted.

### III. CONCLUSION

There are no disputed issues of material fact, and the defendants' motion for summary judgment on the copyright-infringement claim is granted. Landry does not oppose the dismissal of the LUTPA claim as preempted; therefore, the LUTPA claim is dismissed. The court *sua sponte* dismisses the claim under the Lanham Act for failure to state a claim upon which relief may be granted.

New Orleans, Louisiana, this __4th__ day of December, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

14